UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BREY CORP. t/a Hobby Works<br>MILFORD & FORD ASSOCIATES, INC.<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>ADT SECURITY SERVICES, INC.<br><br>　　　　Defendant. | CIVIL ACTION NO. |

## CLASS ACTION COMPLAINT

In 1991, Congress enacted the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "unrestricted telemarketing . . . can be an intrusive invasion of privacy . . ."  47 U.S.C. § 227, Congressional Statement of Findings #5.  Specifically, in enacting the TCPA, Congress outlawed telemarketing via unsolicited facsimile ("Junk Fax").  *See* 47 U.S.C. § 227.  Milford & Ford Associates, Inc. and Brey Corp. t/a Hobby Works (collectively referred to as "Plaintiffs"), on behalf of themselves and all persons and entities similarly situated, file this complaint against the Defendant ADT Security Services, Inc. ("ADT" or "Defendant"), for its violation of federal telemarketing law by transmitting Junk Faxes.

## THE PARTIES

1.　　Milford & Ford Associates, Inc., is a Massachusetts corporation with a principal place of business at 350 Washington Street in Wellesley, MA.

2.　　Brey Corp t/a Hobby Works is a Maryland corporation with a principal place of business at 14300 Cherry Lane Court, #106, in Laurel, MD.

3. ADT Security Services, Inc. is a Florida corporation with its corporate headquarters in Boca Raton, FL.

4. At all relevant times, ADT transacted business in Massachusetts, solicited business in Massachusetts, engaged in a persistent course of conduct in Massachusetts, or has derived substantial revenue from services rendered in Massachusetts.

## JURISDICTION

5. The District Court has federal question jurisdiction over these claims pursuant to 28 U.S.C. § 1331.

## THE LEGAL BASIS OF THE CLASS CLAIMS

6. This class action arises from, what is suspected to be, the violation by ADT of federal law prohibiting privacy violations via invasive telemarketing practices.

7. The claims of the Plaintiffs, and the class of persons they seek to represent, arise pursuant to the provisions of the TCPA, a federal statute enacted to prohibit unreasonable invasions of privacy via certain telemarketing practices.

8. The TCPA prohibits the use of a facsimile machine to send unsolicited advertisements for goods and services. 42 U.S.C. §227(b)(1)(C).

9. The TCPA requires that even facsimile advertisements being sent to consumers who consented to receipt, or with whom the advertiser had an established business relationship, must include language on the facsimile which clearly informs the recipient that they may request that future facsimiles cease, and that failure to remove the consumer's facsimile from the telemarketer's database within thirty days is itself a violation of the TCPA. 42 U.S.C. §227(b)(2)(D).

10. The TCPA, 47 U.S.C. §227(b)(3) provides a private right of action as follows:

> A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State, (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation, (B) an action to recover for actual monetary loss from such a violation, or to receiver $500 in damages for each violation, whichever is greater, or (C) both such actions.

11. The federal regulations implementing the TCPA similarly provide that no person may "[u]se a telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine." 47 C.F.R. §64.1200(a)(3).

12. The federal regulations implementing the TCPA also provide that a "sender" of a facsimile advertisement is, "the person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement." 47 C.F.R. §64.1200(f)(8).

13. Plaintiffs bring this action individually and as the representatives of all members of a class, nationwide, pursuant to Rule 23 of the Federal Rules of Civil Procedure.

**FACTUAL ALLEGATIONS AS TO THE REPRESENTATIVE PLAINTIFFS AND ADT'S WIDESPREAD UNSOLICITED FACSIMILE TRANSMISSIONS**

14. On August 4, 2009, ADT, or some entity acting on behalf of ADT or for its benefit, transmitted an unsolicited facsimile advertisement to Plaintiff Milford & Ford Associates (the "Milford Fax"), and upon information and belief, thousands of other consumers and entities throughout the United States. A copy of the Milford Fax is attached as Exhibit A.

15. The Milford Fax advertised the commercial availability of ADT's goods and services.

16. Milford & Ford Associates, Inc. did not give express consent to ADT prior to the transmission of the Junk Fax.

17. Milford & Ford Associates did not have a prior business relationship with ADT.

18. The Milford Fax did not contain compliant opt out notice.

19. On February 23, 2011, ADT, or some entity acting on behalf of ADT or for its benefit, transmitted an unsolicited facsimile advertisement to Plaintiff Brey Corp. (the "Brey Fax"), and upon information and belief, thousands of other consumers and entities throughout the United States. A copy of the Brey Fax is attached as Exhibit B.

20. The Brey Fax advertised the commercial availability of ADT's goods and services.

21. Brey Corp. did not give express consent to ADT prior to the transmission of the Junk Fax.

22. Brey Corp. did not have a prior business relationship with ADT.

23. The Brey Fax did not contain compliant opt out notice.

24. Attached at Exhibit C are unsolicited faxes sent by ADT to other consumers, with whom ADT lacked an established business relationship, and from whom no express consent was given to receive such unsolicited facsimiles.

25. These facsimiles advertised the commercial availability of ADT's goods and services.

26. These facsimiles did not contain compliant opt out notice.

## ADT'S AUTHORIZED DEALER PROGRAM

27. ADT is the self-proclaimed world's largest provider of residential and commercial electronic security service, handling over seven million customers.

28. ADT markets and distributes products via a distribution network of authorized dealers.

29. ADT compensates each authorized dealer through a structure of commission payments based upon the amount of product purchased and/or sold.

30. ADT allows its authorized dealers to market ADT's products.

31. ADT has, at all times, had the right to control its authorized dealers as evidenced by the following facts:

    a.    ADT's contracts with its dealers are form agreements prepared by ADT typically entitled "Authorized Dealer Agreement."

    b.    Each ADT authorized dealer is given a set of standardized written procedures, entitled the "ADT Dealer Program Guidelines", which are referenced by and incorporated into the Authorized Dealer Agreement.

    c.    Pursuant to these form contracts, ADT's authorized dealers agree to sell and install home security services to customers and then are *required* to "sell" these customer accounts exclusively to ADT, which then provides security monitoring services.

    d.    Once an authorized dealer installs alarm equipment in a customer's home or office, the alarm system is connected by telephone lines to ADT's monitoring centers, which monitor the alarm equipment.

    e.    All authorized dealers are instructed to market using the ADT name. In addition, ADT advertises through its website to its authorized dealers that "As an ADT Authorized Dealer, you can have the opportunity to capitalize on the power of the ADT name."

    f.    ADT shares its program of advertising tools with authorized dealers, tools that coordinate with ADT's national advertising campaign. These tools include, but are not limited to, direct mail pieces, lead lists, a web site for ordering trade show displays, and the forms and contracts the authorized dealers use in consumer transactions.

### ADT PROMOTES THE USE OF TELEMARKETING TO GENERATE NEW LEADS

32. ADT sells its security alarm systems through its marketing department as well as Authorized Dealers.

33. ADT promotes these systems through a variety of marketing methods, including telemarketing. ADT also approves authorized dealers' scripts and marketing materials.

34. ADT's contractual agreements with authorized dealers give dealers the authority to solicit consumers through means including telemarketing. ADT authorized dealers sell ADT security systems exclusively, using a variety of methods, including telemarketing.

35. In 2007, the Federal Trade Commission ("FTC") brought a complaint against ADT and two of its authorized dealers, for engaging in illegal telemarketing.

36. The FTC alleged that ADT marketed its security systems directly to consumers and through authorized dealers, which used a variety of marketing techniques, including telemarketing.

37. In November of 2007, ADT and the FTC entered into a Consent Decree and Order for Civil Penalties ("Consent Decree"). A copy of the Consent Decree is attached as Exhibit D.

38. As part of the Consent Decree with the FTC, ADT agreed

- To conduct a reasonable due diligence investigation to ensure that its authorized dealers had established and actively enforced telemarketing policies and procedures;

- To have a written contract with authorized dealers engaged in telemarketing on ADT's behalf that specifically included provisions relating to telemarketing compliance;

- To monitor outbound telemarketing campaigns conducted by its authorized dealers;

- To cease doing business with an authorized dealer after becoming aware that the authorized dealer was engaged in telemarketing in violation of the TSR;

39. By entering into the Consent Decree, ADT acknowledged that it had both the ability and the duty to control the actions of its authorized dealers to ensure compliance with telemarketing law.

40. The FTC Consent Decree further specifically enjoined ADT from failing to monitor its authorized dealers, and from doing business with authorized dealers who ADT knew or should have known were engaged in illegal telemarketing.

41. The FTC Consent Decree further Ordered ADT to:

- Develop, implement, adequately staff, and continuously operate and maintain, a system to receive and retain complaints related to telemarketing ADT goods or services that are received by telephone, mail and e-mail.

- Make available to the FTC all relevant information relating to complaints made to ADT by consumers relating to its telemarketing practices, including but not limited to (1) the name, address and phone number of the complaining consumer; (2) the substance of the complaint; (3) the nature and result of any investigation concerning the complaint; (4) the name, phone number and address of the Authorized Dealer, Authorized Marketer or Authorized Telemarketer, which made the call that was the basis of the complaint (5) the

date of the call, and (6) any relevant information for determining whether a violation of the law had occurred.

- Submit to the FTC monthly reports documenting the complaints made to ADT in regards to violations of the Telemarketing Sales Rule;

- Promptly investigate each consumer complaint relating to telemarketing and take all reasonable steps to identify the person whose activities prompted the complaint; and

- For a period of five years from the entry of the Order, to take a random sampling of 10% of all new accounts to determine how its customers were solicited and to specifically note if the client was contacted initially through outbound telemarketing.

### ADT PROFITS DIRECTLY FROM ILLEGAL TELEMARKETING THROUGH ITS JOINT VENTURE WITH AUTHORIZED DEALERS

42. As described above, ADT markets its goods and services directly to consumers and through its relationships with authorized dealers.

43. At all relevant times, ADT was engaged in a partnership with its authorized dealers.

44. At all relevant times, ADT was engaged in a contractual association with its authorized dealers to carry out a single business enterprise for profit.

45. To carry out this partnership and/or joint venture, ADT and its authorized dealers combined their property, money, effects, skill and knowledge.

46. In the course of its partnership or joint venture, ADT delegated authority to market its products to ADT's authorized dealers.

47. ADT either knew or should have known that its authorized dealers were engaging in telemarketing via unsolicited facsimile.

48. Even after ADT became aware that its authorized dealers were engaging in telemarketing via unsolicited facsimile it failed to take sufficient action to cause such conduct to cease.

49. By failing to act after having knowledge of such conduct, ADT ratified illegal telemarketing conducted on its behalf by its authorized dealers.

## CONSUMERS COMPLAIN ABOUT ADT'S
## TELEMARKETING TACTICS

50. For many years now, consumers have been complaining directly to ADT, and to the Federal Communication Commission, that ADT's distributors were engaging in illegal unsolicited facsimile telemarketing in violation of the TCPA.

51. More than forty complaints have been filed with the Federal Communications Commission regarding ADT unsolicited facsimiles.

52. Attached as Exhibit E is a Freedom of Information Act response from the FCC detailing ADT unsolicited facsimile advertisement complaints.

53. Upon information and belief, despite having knowledge that a number of its distributors were engaged in illegal telemarketing, and having the ability to discipline such distributors, ADT failed to take action to cause such conduct to cease into the future.

54. By failing to take sufficient action to cause unsolicited facsimile telemarketing to cease, ADT ratified the actions of those individuals and entities acting on its behalf..

## CLASS ALLEGATIONS

55. Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of all other persons or entities similarly situated throughout the United States.

56. Upon information and belief, over the past four years, pursuant to a uniform policy and procedure, ADT has engaged in widespread advertising, either by its own acts or through its Authorized Dealers, via unsolicited facsimile transmission in violation of the TCPA.

57. Upon information and belief, over the past several years, pursuant to a uniform policy and procedure, ADT, either by its own acts or through its Authorized Dealers, has transmitted unsolicited facsimile advertisements to thousands of consumers and entities throughout the United States.

58. Upon information and belief, pursuant to a uniform policy and procedure, ADT, either by its own acts or through its Authorized Dealers, did not obtain the consent of facsimile recipients prior to the transmission of facsimile advertisements.

59. To the extent facsimile advertisements initiated by or on behalf of ADT to consumers who had an established business relationship with ADT, the facsimile advertisements are still in violation of the TCPA as they did not contain the "opt-out" notice required by law.

60. The class of persons represented by Plaintiffs are composed of all persons or entities within the United States to whom ADT sent, either by its own acts or through its Authorized Dealers, or caused to be sent, facsimile advertisements promoting ADT and its services, or the services of any of its divisions, at any time within four years prior to the filing of the instant Complaint.

61. The class as defined above is identifiable by phone records, fax transmittal records, and fax number databases, employed by ADT, or its agents, in transmitting its unsolicited facsimile advertisements. On information and belief, the potential class members number in the thousands and constitutes a class so numerous that joinder of all class members is impracticable. Plaintiffs are members of the class.

62. There are questions of law and fact common to Plaintiffs and to the proposed class, including but not limited to the following:

    a. Whether ADT violated the TCPA, FCC promulgating regulations, by engaging in illegal fax advertising.

    b. Whether the facsimiles sent by ADT to class members constitute unsolicited advertisements;

    c. Whether the Plaintiffs and the members of the class are entitled to statutory damages as a result of ADT's actions.

63. Plaintiffs' claims are typical of the claims of the class.

64. Plaintiffs are an adequate representative of the class because their interests do not conflict with the interests of the class, and they will fairly and adequately protect the interests of the class, and it are represented by counsel skilled and experienced in class actions.

65. The actions of ADT, either by its own acts or through its Authorized Dealers, are generally applicable to the class as a whole and to Plaintiffs.

66. Common questions of law and fact predominate over questions affecting only individual members of the class and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by ADT and/or its agents.

67. The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

68. Plaintiffs are not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

69. Plaintiffs are capable of and willing to represent the other members of the class.

## CAUSES OF ACTION

### COUNT I: VIOLATION OF THE TCPA
### SENDING UNSOLICITED FACSIMILE ADVERTISEMENTS

70. Plaintiffs incorporate the allegations from all previous paragraphs as if fully set forth herein.

71. ADT, or its agents, caused unsolicited facsimile advertisements to be sent to Plaintiffs and to the facsimile machines of other members of the class, in violation of the TCPA and the FCC's promulgating regulations.

72. By causing unsolicited facsimile advertisements to be sent to the class, ADT violated the privacy rights of class members.

73. By causing unsolicited facsimile advertisements to be sent to the class, ADT caused class members to incur cost in the form of paper and toner.

74. By causing unsolicited facsimile advertisements to be sent to the class, ADT caused the facsimile machines of class members to be encumbered by the transmission of unsolicited facsimiles.

75. ADT failed to provide the requisite notice on its advertisements of a recipient's right to cease receiving such advertisements and a cost free mechanism to make such request.

76. The TCPA provides for statutory damages in the amount of a minimum of $500 for each separate violation of the TCPA.

### COUNT II: INJUNCTIVE RELIEF

77. Plaintiffs incorporate the allegations from all previous paragraphs as if fully set forth herein.

78. The TCPA expressly authorizes injunctive relief to prevent future violations of the Act.

79. The Plaintiff, acting on behalf of the Class, respectfully petitions the Court to order ADT to immediately cease engaging in unsolicited facsimile advertising in violation of the TCPA.

**PRAYER FOR RELIEF**

WHEREFORE, on behalf of itself and the other members of the class, the Plaintiff prays for the following relief:

1. That ADT immediately be restrained from engaging in future telemarketing in violation of the TCPA.

2. That ADT its agents, or anyone acting on its behalf, be immediately restrained from altering, deleting or destroying any documents or records that could be used to identify the members of the class.

3. That this Court certify the claims of the named Plaintiffs and all other persons similarly situated as class action claims as provided by Rule 23 of the Federal Rules of Civil Procedure.

4. That the named Plaintiffs and the other members of the class action so certified be awarded $500 for each negligent violation of the TCPA by ADT.

5. That the Court enter an appropriate order enjoining ADT, its agents, or anyone acting on its behalf, from altering, erasing, changing, deleting, destroying or otherwise disposing of any records, including computer disks or computer programs, in its possession or control which can be used to identify all persons, corporations, or other entities to whom defendants have transmitted unsolicited facsimile advertisements.

6. That the named Plaintiff and the members of the class be granted such other and further relief as is just and equitable under the circumstances.

**THE CLASS PLAINTIFFS REQUEST A JURY TRIAL AS TO ALL CLAIMS OF THE COMPLAINT SO TRIABLE**

|  |  |
|---|---|
|  | PLAINTIFFS,<br>By Their Attorneys,<br><br>/s/ Anthony I. Paronich<br>Edward A. Broderick<br>Anthony I. Paronich<br>Broderick Law, P.C.<br>125 Summer St., Suite 1030<br>Boston, MA 02110<br>(617) 738-7080<br>Email: ted@broderick-law.com<br><br>Matthew P. McCue<br>The Law Office of Matthew P. McCue<br>1 South Avenue, Suite 3<br>Natick, MA 01760<br>(508) 655-1415<br>Email:  mmccue@massattorneys.net |
| Dated: March 9, 2012 |  |